Submitted on remand from the United States Supreme Court September 7,
decision of the Court of Appeals reversed; judgment of the circuit court
reversed, and case remanded to the circuit court for further proceedings
December 16, 2004

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## RANDY EVERETT DILTS,
*Petitioner on Review.*

(99CR-0172; CA A106034; SC S49525; USSC 03-9412)

103 P3d 95

Eric M. Cumfer, Senior Deputy Public Defender, Salem, filed the briefs for petitioner on review. With him on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, Salem, filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

This case is before us on remand from the United States Supreme Court. In our prior decision, we affirmed defendant's conviction and sentence for assault. *State v. Dilts*, 336 Or 158, 82 P3d 593 (2003) (*Dilts I*). Defendant petitioned for a writ of certiorari from the United States Supreme Court, and the Court vacated the judgment in *Dilts I* and remanded the case to us for further consideration in light of the Court's decision in *Blakely v. Washington*, 542 US ___ , 124 S Ct 2531, 159 L Ed 2d 403 (2004). *Dilts v. Oregon*, 542 US ___ , 124 S Ct 2906, 159 L Ed 2d 809 (2004). For the reasons that follow, we now reverse the decision of the Court of Appeals and the judgment of the trial court, and remand the case to the trial court for further proceedings.

We begin by briefly reviewing the facts, the parties' arguments, and the decision in *Dilts I*. This court summarized the procedural background of the case in *Dilts I*:

"Defendant pleaded guilty to assault in the third degree. ORS 163.165. The trial court found that the crime was racially motivated and imposed an upward departure sentence under the Oregon Felony Sentencing Guidelines (sentencing guidelines). The trial court sentenced defendant to 36 months' imprisonment and an additional 36-month period of post-prison supervision. Defendant appealed from that sentence, and the Court of Appeals affirmed. *State v. Dilts*, 179 Or App 238, 39 P3d 276 (2002). Defendant sought review, arguing that the trial court violated his state and federal jury trial rights and his federal due process rights by imposing a departure sentence based on a fact not pleaded in the indictment or proved beyond a reasonable doubt."

336 Or at 160.

On review in this court, defendant argued that, based on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), federal constitutional requirements for jury trial and due process prohibited the trial court from imposing a sentence greater than the "presumptive sentence" established in the sentencing guidelines and determined by the

seriousness of the crime and defendant's criminal history.[1] The presumptive sentence for defendant's crime was 15 to 18 months' imprisonment, but, as noted, the trial court had found that the crime had been racially motivated and, as the sentencing guidelines permitted, had imposed a sentence of 36 months' imprisonment and an additional 36 months of post-prison supervision. *Dilts I*, 336 Or at 163-64.

In this court, defendant maintained that, under *Apprendi*, the trial court could not increase his sentence for assault above the presumptive range based on the allegedly racial motivation for the assault unless the state alleged racial motivation in the indictment and proved it to a jury beyond a reasonable doubt. The state responded that *Apprendi* did not bar the upward departure in defendant's sentence as long as defendant's sentence was not greater than the statutory maximum sentence for the crime that defendant had committed.[2] Because third-degree assault is a Class C felony, ORS 163.165(2), for which the statutory maximum sentence is five years' imprisonment, ORS 161.605(3), the state argued that defendant's federal due process and jury trial rights had not been violated by the upward departure from the guidelines' presumptive sentence, as long as the sentence was not more than five years' imprisonment.[3]

In *Dilts I*, this court affirmed defendant's sentence, holding that ORS 161.605 established the maximum penalty for the crime that defendant had committed and that defendant's sentence therefore was constitutional under *Apprendi* because it had not exceeded that prescribed statutory maximum.[4] *Dilts I*, 336 Or at 175-76. In doing so, this court noted

---

[1] In *Dilts I*, this court described the origins and mechanics of the sentencing guidelines. 336 Or at 161-62.

[2] In *Apprendi*, the Court summarized its holding as follows: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490.

[3] Defendant's sentence of 36 months' post-prison supervision, when added to his sentence of 36 months' imprisonment, exceeded the statutory maximum sentence of five years (60 months). However, defendant did not preserve any issue as to that fact in the Court of Appeals. *Dilts I*, 336 Or at 164 n 5.

[4] This court declined to reach defendant's state law challenges to his sentence, because he had failed to develop them with sufficient particularity. *Dilts I*, 336 Or at 164 n 6.

that its decision was consistent with decisions from state courts in Minnesota and Washington, including *State v. Blakely*, 111 Wn App 851, 47 P3d 149 (2002), and further noted that the United States Supreme Court had granted the defendant's petition for certiorari in *Blakely*. *Dilts I*, 336 Or at 169 n 11. Subsequent to this court's decision in *Dilts I*, the Court reversed the decision of the Washington Court of Appeals in *Blakely*. As noted, defendant also petitioned for a writ of certiorari, and, following its decision in *Blakely*, the Court vacated and remanded this court's judgment in *Dilts I* for further proceedings in light of *Blakely*.

■ On remand, defendant argues that, under *Blakely*, the sentence that the trial court imposed and that this court affirmed in *Dilts I* violates his federal jury trial and due process rights and that this court should remand to the trial court for resentencing to a sentence within the presumptive range.

The state agrees that this court's decision in *Dilts I* "cannot be reconciled with the constitutional requirements set forth in *Blakely*." Specifically, the state concedes that *Blakely* rejected the proposition, upon which this court based its holding in *Dilts I*, that the statutory maximum sentence for *Apprendi* purposes is the statutory indeterminate maximum sentence, rather than the guidelines' presumptive sentence. The state argues, however, that this court should sever the requirement in OAR 213-008-0001 that makes the presumptive sentence mandatory. According to the state, if this court treats the presumptive sentence merely as a "recommended" sentence and permits the trial court either to impose that sentence or a departure sentence based on the factors in the guidelines, then the presumptive sentence no longer will be the "statutory maximum," and the Oregon sentencing scheme will be consistent with *Blakely* and *Apprendi*. By applying the sentencing guidelines in that way, the state argues, this court can and should affirm defendant's sentence. Alternatively, the state argues that, to comply with *Blakely*, this court should remand the case to the trial court to permit a jury to consider aggravating facts that could permit a sentence greater than the guidelines' presumptive sentence.[5]

---

[5] The state makes several other arguments regarding how this court should or should not apply *Blakely* in other contexts. Here, we reach only the arguments

We now turn to the Supreme Court's decision in *Blakely* and the effect of that decision on defendant's sentence here. The defendant in *Blakely* pleaded guilty to second-degree kidnapping involving domestic violence and use of a firearm. *Blakely*, 124 S Ct at 2534-35. Washington's sentencing guidelines, like Oregon's, establish a presumptive sentence—known as the "standard range"—for a particular crime. *Id.* at 2535. They also permit the sentencing court to impose a sentence above the standard range—an "exceptional" sentence—if the court finds "substantial and compelling reasons" to justify such a sentence. *Id.* (quoting *former* Revised Code of Washington (RCW) Section 9.94A.120(2), recodified as RCW Section 9.94A.505). Under the Washington sentencing guidelines, the standard range for the crime to which defendant pleaded guilty was 49 to 53 months. *Id.* The trial court, however, found that the defendant had acted with "deliberate cruelty," one of several statutorily enumerated grounds for departure in a domestic violence case, and, on that basis, it imposed an exceptional sentence of 90 months. *Id.* The defendant argued that imposing a sentence in excess of the standard-range maximum, based on aggravating facts that neither were admitted by him nor found by a jury, violated his jury trial and due process rights as articulated in *Apprendi*. Washington responded that the relevant statutory maximum for *Apprendi* purposes was the 10-year maximum for Class B felonies, including second-degree kidnapping, rather than the 53-month standard-range maximum under the sentencing guidelines. *Blakely*, 124 S Ct at 2537.

---

necessary to the disposition of this case in this court. We recognize the many unsettled questions regarding the application of *Blakely* and *Apprendi* to different aspects of Oregon's sentencing scheme. We think that those questions are better answered in the context of specific cases in which they are raised and briefed. Moreover, we are aware that we may be shooting at a moving target. In response to *Blakely*, prosecutors, the criminal defense bar, and members of the legislature in many states, including Oregon, may be reviewing sentencing procedures for possible modification. Additionally, the United States Supreme Court has granted petitions for certiorari in two cases that raise *Blakely*-related issues, *United States v. Booker*, 375 F3d 508 (7th Cir 2004), *cert granted*, 125 S Ct 11, 159 L Ed 2d 838, and *Fanfan v. United States*, No 03-47, 2004 WL 1723114 (D Me June 28, 2004), *cert granted*, 125 S Ct 26, 159 L Ed 2d 854. In deciding those cases, the Court may provide further guidance regarding the scope of the jury trial right as it applies to criminal sentencing.

The Court rejected Washington's argument:

> "Our precedents make clear * * * that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."

*Id.* (citations omitted; emphasis in original). The Court noted that, if the trial court had imposed the 90-month sentence solely on the basis of the plea—that is, without making the additional finding regarding deliberate cruelty—then the trial court would have been reversed. *Id.* at 2538. Because the trial court had imposed a sentence that exceeded the statutory maximum and did so because it had found additional facts that had not been admitted by the defendant or proved to a jury, the "sentencing procedure did not comply with the Sixth Amendment." Accordingly, the defendant's sentence was invalid. *Id.*

The Court's decision in *Blakely* compels us to reverse our decision in *Dilts I*. As relevant to the Court's holding in *Blakely*, Oregon's sentencing scheme is not materially different from Washington's. The Washington sentencing guidelines establish a "standard range," and the trial court may impose a sentence that exceeds the standard range maximum only if the court makes additional findings. Under that sentencing scheme, the Court held that a defendant has a constitutional right to have a jury decide whether the state has proved those additional facts. Similarly, Oregon law provides that "the sentencing judge *shall* impose the presumptive sentence * * * *unless* the judge finds substantial and compelling reasons to impose a departure." OAR 213-008-0001 (emphasis added);[6] *see also* ORS 137.669 (sentencing guidelines "shall control the sentences for all crimes committed after the effective date of such guidelines * * *"); ORS 137.671(1) ("The court may impose a sentence outside the

---

[6] As this court noted in *Dilts I*, although the Oregon Criminal Justice Council created the sentencing guidelines as administrative rules, the legislature approved them in 1989, and they have the authority of statutory law. 336 Or at 162.

presumptive sentence or sentence range made presumptive by ORS 137.669 for a specific offense if it finds there are substantial and compelling reasons justifying a deviation from the presumptive sentence."). If the trial court imposes a sentence that exceeds the presumptive sentence without making the required additional findings, then that sentence is erroneous. *See, e.g.*, *State v. Woodin*, 131 Or App 171, 176, 883 P2d 1332 (1994) (remanding case for resentencing because trial court imposed sentence in excess of presumptive sentence without making departure findings).

Here, the presumptive sentence that was based on the facts that were alleged in the indictment and admitted by defendant in his guilty plea was 15 to 18 months' imprisonment, so the "statutory maximum" sentence that the trial court could have imposed without making additional factual findings was 18 months' imprisonment. If the trial court had imposed its sentence of 36 months' imprisonment without finding the additional facts regarding the racial motivation for the assault, then that sentence would have been subject to reversal on appeal. The trial court had authority to impose the upward departure *only* because it made additional findings of fact. That is precisely the procedure that the Court in *Blakely* found did not comply with the Sixth Amendment's jury trial guarantee. The Court held in *Blakely* that, under the Sixth Amendment, a defendant has a right to have additional facts that may increase his or her sentence beyond the otherwise applicable maximum sentence decided by a jury, rather than by a trial judge. Therefore, like the defendant's sentence in *Blakely*, defendant's sentence here is constitutionally impermissible.

◼ We now turn to the consequences of that conclusion. As noted, the state argues that, notwithstanding *Blakely*, this court should affirm defendant's sentence by construing the presumptive sentence that the sentencing guidelines establish for his crime to be a "recommended" sentence rather a "mandatory" sentence. The state argues that this result can be achieved by severing OAR 213-008-0001, which provides that the sentencing court "shall" impose the presumptive sentence "unless the judge finds substantial and compelling reasons to impose a departure" from the rest of

the sentencing guidelines. If that mandatory provision is severed, the state asserts, the guidelines would not suffer from any constitutional infirmity.

■    The state misapprehends the nature of severability. ORS 174.040 governs decisions regarding severability. That statute provides that, *"if any part* of the statute is held unconstitutional, the *remaining parts* shall remain in force" unless certain conditions identified in the statute are met. (Emphasis added.) *See also City University v. Oregon Office of Educ. Policy*, 320 Or 422, 425, 885 P2d 701 (1994) ("This court has held that, *when part or parts of a statute are held unconstitutional*, the whole statute need not be invalidated *if the part or parts that are constitutionally impermissible are severable* from the remainder of the statute." (Emphasis added.)). ORS 174.040 and this court's cases thus demonstrate that this court considers whether a part of a statute should be severed only when part of a statute is held to be unconstitutional and the court therefore must determine whether *that* part of the statute can be severed and the remaining parts of the statute saved.

The state's severability argument suffers from two defects. First, the state asks us to sever a part of the guidelines—the requirement that the presumptive sentence be imposed in the absence of additional findings—that no party claims is unconstitutional. Second, nothing in *Blakely* or in our application of *Blakely* to the sentencing guidelines here suggests that the guidelines themselves, properly applied, are unconstitutional. Because these two defects are closely related in this case, we discuss them together.

As stated above, we hold in this case only that, under *Blakely*, the sentencing guidelines were applied unconstitutionally to defendant. We agree with the state that this decision will have a significant impact on criminal sentencing because *Blakely* also makes it clear that whenever a trial court, in the absence of an effective waiver, imposes a sentence that exceeds the presumptive sentence on the basis of aggravating facts found by the trial court rather than by a jury (other than the fact of a prior conviction), that sentence amounts to an unconstitutional application of the sentencing guidelines.

However, the fact that the sentencing guidelines may be applied unconstitutionally, as they were in this case, does not mean that we must reject the sentencing guidelines themselves as unconstitutional. On the contrary, the Court in *Blakely* specifically stated that determinate sentencing schemes, like Oregon's sentencing guidelines, are permissible if they are implemented "in a way that respects the Sixth Amendment." 124 S Ct at 2540; *see also id.* at 2540-41 (rejecting argument that *Blakely* undermines determinate sentencing and concluding that focus instead is on protecting jury trial right). Because we have not held that a part of the sentencing guidelines is unconstitutional, we can identify no unconstitutional part of the guidelines that might be appropriate to sever. Rather than add to or subtract from the words in the sentencing guidelines, as the state suggests, our holding simply requires Oregon courts to apply the guidelines "in a way that respects the Sixth Amendment." 124 S Ct at 2540.

■ Our holding in this regard illustrates the appropriate role of the judicial branch in criminal sentencing. "Determining the range of possible sentences for particular crimes historically has been a legislative, rather than a judicial, function." *State ex rel Huddleston v. Sawyer*, 324 Or 597, 615, 932 P2d 1145 (1987); *see also State v. Smith*, 128 Or 515, 524, 273 P 323 (1929) ("The power to declare what punishment may be assessed against those convicted of crime is not a judicial, but a legislative, power * * *."). Here, the legislature authorized the creation of the sentencing guidelines and later adopted the guidelines that the Oregon Criminal Justice Council promulgated. The guidelines describe the presumptive sentence range as the "appropriate punishment" for a crime based on "the seriousness of the crime of conviction * * * and the offender's criminal history." OAR 213-002-0001(3)(d). "A sentencing judge must impose a presumptive sentence * * * unless there are 'substantial and compelling' reasons in aggravation or mitigation * * *." *State v. Davis*, 315 Or 484, 487, 847 P2d 834 (1993).

The Sixth Amendment, as interpreted in *Blakely*, prohibits the trial court from imposing a sentence in excess of the presumptive sentence unless a jury finds the aggravating facts or the defendant effectively waives that jury trial right.

Our obligation is to apply the guidelines adopted by the legislature, consistently with constitutional requirements, and our decision here does that. We see no basis upon which to sever a part of the guidelines as the state suggests.

The state has an alternative argument. The state argues that, if this court concludes that defendant's sentence is invalid, then it should remand to allow a jury to consider aggravating factors that could support a sentence in excess of the presumptive sentence in the guidelines. Defendant agrees with the general proposition that, under *Blakely*, a trial court may impose a sentence that exceeds the presumptive sentence if the facts on which the increased sentence is based are determined by a jury. That conclusion follows ineluctably from the reasoning of *Blakely*. Defendant disagrees, however, with the state's position that, at this stage of the proceeding, it now could subject defendant to a separate sentencing trial on remand during which it would seek to prove to a jury the aggravating facts previously found by the trial court. Defendant asserts that the common law and various state and federal constitutional provisions require the state to allege in the indictment any facts that may enhance the defendant's sentence, or at least to notify the defendant before trial that those facts will be at issue.[7] Defendant points out that the indictment here did not allege such facts and that the state did not notify defendant that such facts would be at issue before his guilty plea. In those circumstances, he argues, the state is precluded from seeking to present those facts to a sentencing jury now.

We decline to answer the question that the state raises, because, at this point in the proceeding, it is not presented in a sufficiently concrete way. It is, at least, contingent on actions that the parties may or may not take on remand. The only concrete issue before us at this time is whether defendant's sentence, which we affirmed in *Dilts I*, is invalid in light of *Blakely*. We have held that it is. We also have rejected the state's argument that we nevertheless should

---

[7] Defendant's brief is less than clear on his specific objections to a sentencing trial on remand, but he cites Oregon common law, Article I, section 11, and Article VII (Amended), section 5, of the Oregon Constitution, and the Due Process and Equal Protection clauses of the Fourteenth Amendment.

affirm defendant's sentence by severing the "mandatory" sentence provision of the guidelines and applying the guidelines to defendant, as so modified. Instead, we have determined that the case must be remanded to the trial court for resentencing. Our discussion above makes clear that a sentence within the guidelines' presumptive range would be constitutional. However, we do not speculate as to the specific positions that the parties may take before the trial court respecting that court's authority in the resentencing proceedings. It is inappropriate to address statutory issues, as well as more fundamental state and federal constitutional issues, relating, *inter alia*, to indictment, notice, and jury trial until they have been raised before and decided by the trial court.

For the reasons set out above, defendant's sentence is invalid and must be vacated. If the parties agree, then the trial court may sentence defendant to a sentence that does not exceed the upper limit of the presumptive sentence under the sentencing guidelines. If the parties disagree, then their positions regarding particular alternative means of determining the proper sentence must be presented to and decided by the trial court in the first instance.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.